******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STACY B. *v.* ROBERT S.*
(AC 38043)

Alvord, Mullins and Schaller, Js.

*Argued January 5—officially released May 10, 2016*

(Appeal from Superior Court, judicial district of
Waterbury, Hon. Wilson J. Trombley, judge trial
referee.)

*John R. Williams*, for the appellant (defendant).

*Craig C. Fishbein*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Robert S., appeals from the granting of a civil protective order barring the defendant from stalking the plaintiff, Stacy B. On appeal, the defendant claims that the trial court erred in (1) failing to determine that his conduct qualified as constitutionally protected under the first amendment to the United States constitution and article first, §§ 4 and 5, of the Connecticut constitution;[1] and (2) finding that the conduct constituted stalking when the evidence was insufficient. We affirm the judgment of the trial court.

The plaintiff filed an application for a protective order pursuant to General Statutes § 46b-16a[2] on April 4, 2015, alleging that he was being stalked pursuant to General Statutes § 53a-181d[3] by the defendant.[4] Following a hearing, the trial court granted the plaintiff's application.

After citing the standard for stalking pursuant to § 53a-181d, the court found that "[t]he documentary evidence and the credible testimony of [the plaintiff] clearly demonstrates that [the defendant], having no justification to do so, embarked upon a course of conduct, the purpose of which was to impugn [the plaintiff's] professional competence, humiliate and degrade him as a person and thereby adversely affect, if not destroy, his ability to make a living from his chosen profession as a clinical forensic psychologist, who specializes in threat assessments for government and corporate entities." Specifically, it found that the parties were initially friends, but in 2011, the plaintiff asserted that the defendant began "to show signs of delusion and paranoia and was engaging in bizarre behavior," which motivated him to attempt to distance himself from the defendant. This attempt to distance himself "was unsuccessful and generated bizarre e-mails and voice messages which began to constitute harassment . . . ." The plaintiff filed complaints with the Norwalk Police Department, which resulted in warnings from two separate police officers that the defendant ignored.

The court highlighted a number of incidents that "would cause any reasonable person under the same circumstances to fear for his personal safety and to fear that his employment, business and career [were] thereby threatened." It found that the defendant had provided information regarding the plaintiff to the Connecticut Board of Firearms Permit Examiners, of which the plaintiff was a member, the State Board of Health, the American Psychological Association, and the Los Angeles Police Department, which had invited the defendant to speak as a guest lecturer at a threat management conference. This information consisted of a 2009 ex parte abuse prevention order issued by the Boston Municipal Court against the plaintiff, and various "e-mails and Internet postings . . . showing that

a civil judgment, presently unsatisfied, was entered against [the plaintiff] by the Superior Court for the judicial district of New Britain for his nonpayment of a student loan from Jacksonville University. Other postings and . . . blogs questioned whether [the plaintiff] had a Florida criminal record and whether he attended, as claimed, Yale and Harvard Universities. [The plaintiff] denied the existence of any criminal record in any state and asserted at the hearing and in his resume . . . that he completed his predoctoral internship at Yale and his postdoctoral residency at Harvard."

The defendant also made comments about the plaintiff on Psychology Today, an online publication to which the plaintiff submitted several articles, referring to the Boston protective order and the unpaid civil judgment, and claiming that the plaintiff "was a 'dangerous individual' and a 'psychopath,' offering no rational basis to support that unwarranted and defamatory assertion." The defendant also provided "disparaging information about [the plaintiff] to [a security firm for which the plaintiff did consulting work on a routine basis] that was purposed to challenge his professional competence and impugn his character." The defendant "referred company officials to a [website], clearly authored by him, entitled 'The Truth About [Stacy B.],' wherein, inter alia, detailed information about the Boston protective order and the unpaid judgment could be found and wherein he [referred] to [the plaintiff] as 'a very sick man.' " The trial court also stated that the defendant continued to provide copies of the e-mail that he had sent to the Connecticut Board of Firearms Permit Examiners "to several third parties, including [the plaintiff's] past, present and potential clients."

The court also found that "[m]ost concerning to this court is [the plaintiff's] credible claim that one week prior to the filing of [the plaintiff's] application seeking a civil protective order, [the defendant] contacted officials employed by the school system where [the plaintiff's] son is in the fourth grade and where [the plaintiff] is a member of that community's school safety board. [The defendant] apparently warned the school official that [the plaintiff] was 'a danger to children.' This incident, and other alarming and irrational conduct detailed herein, engaged in by [the defendant], has reasonably caused [the plaintiff] to fear that he was being 'hunted' by [the defendant] and to take certain precautions, including obtaining a post office box, registering his new car in his wife's premarital name, and hiring an Internet company to delete any derogatory information about him that was electronically posted."

The court then noted that despite its cautionary advisement that its finding could result in criminal prosecution for stalking and disciplinary action against the defendant, an attorney, for violation of the Rules of Professional Conduct, the defendant had again con-

tacted the Los Angeles Police Department regarding the plaintiff, regardless of warnings by both the court and a police officer. It then found that "there is reasonable cause to believe [the defendant] is likely to continue acts that are designed to intimidate or retaliate against [the plaintiff], a finding that is statutorily mandated and is a prerequisite to the granting of the relief sought by [the plaintiff]." It then ordered "that [the plaintiff's] application for a civil protective order is granted. [The defendant] is enjoined from: 1. Assaulting, threatening, abusing, harassing, following, interfering with, or stalking [the plaintiff]; 2. Entering the home of [the plaintiff] or any place in which he may reside and entering the office of [the plaintiff] or any place where he may be employed; 3. Contacting [the plaintiff] in any manner, including by written, electronic or telephone contact, and contacting his home, workplace or others with whom such contact would be likely to cause annoyance or alarm to [the plaintiff]; 4. Contacting any person, including, but not limited to [the plaintiff's] past, current and prospective clients, family members and his child's educators in any manner for any purpose; 5. Creating any fictitious websites the purpose of which is to disseminate any information concerning [the plaintiff]; and 6. Posting any information, whether adverse or otherwise, pertaining to [the plaintiff] on any website for any purpose."

Following the court's judgment, the defendant appealed to this court. In his appeal, he claims that the trial court erred in (1) failing to determine that his conduct qualified as constitutionally protected speech under the first amendment to the United States constitution and article first, §§ 4 and 5, of the Connecticut constitution; and (2) finding that the conduct constituted stalking when the evidence was insufficient. At oral argument before this court, he further asserted that a case recently decided by our Supreme Court, *Gleason* v. *Smolinski*, 319 Conn. 394, 125 A.3d 920 (2015), is relevant to his first amendment claim. We conclude that the defendant failed to properly preserve his constitutional claim in the trial court, and failed to present an adequate record for us to review it. We affirm the trial court on the defendant's second claim to the extent that it is sufficiently presented to us.

I

FIRST AMENDMENT CLAIM

The defendant claims that the court abused its discretion in granting the plaintiff's application for a civil protective order because his conduct was protected by the first amendment to the United States constitution, or by article first, §§ 4 and 5, of the Connecticut constitution. This claim was not preserved in the trial court. We consider unpreserved claims of constitutional magnitude according to the requirements of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), which the

defendant failed to brief. Due to the defendant's failure to provide sufficient analysis of the requirements of *Golding* or of the controlling first amendment standard, and the lack of an adequate record to review any such constitutional claim, we decline to review this claim.

In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) Id., 239–40; see also *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015) (modifying third prong). "The test set forth in *Golding* applies in civil as well as criminal cases." *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 694 n.15, 894 A.2d 919 (2006). "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." *State* v. *Brunetti*, 279 Conn. 39, 55, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

"The first two prongs [of *Golding* review] govern whether we may review the claim, while the second two control whether the defendant may prevail on his claim because there was constitutional error that requires a new trial." *State* v. *Smith*, 289 Conn. 598, 620, 960 A.2d 993 (2008). "Under the first prong of *Golding*, [t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Internal quotation marks omitted.) *State* v. *Roger B.*, 297 Conn. 607, 614, 999 A.2d 752 (2010). "[F]or any *Golding* claim, [i]t is incumbent [on] the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the

trial court . . . any decision made by us respecting [the defendant's] claims would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007). Moreover, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 826, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

The defendant has failed to adequately brief his constitutional claim. The defendant's brief lacks any analysis which, despite the lack of a reference to *Golding*, would demonstrate that the *Golding* requirements were satisfied. See *State* v. *Elson*, 311 Conn. 726, 754–55, 91 A.3d 862 (2014).[5] Most importantly, the defendant has not argued how the first amendment should apply to a claim of stalking pursuant to § 53a-181d. He does not argue what "constitutionally protected activity" means in the context of § 53a-181d (b) (2) (B). *Gleason* contains two first amendment analyses, one for a claim of intentional infliction of emotional distress; *Gleason* v. *Smolinski*, supra, 319 Conn. 404–18; and one for a claim of defamation.[6] Id., 431–39. Both analyses are based on prior case law that was available to the defendant. Despite this, the defendant does not connect any of the body of first amendment case law, some of which he references in conclusory fashion in his brief to this court, to § 53a-181d, to the facts found by the trial court, or to the evidence submitted in the hearing before the trial court. Providing such an analysis is necessary for us to analyze, and the plaintiff to refute, whether the activity qualifies as constitutionally protected. Barring this, neither the plaintiff nor this court knows what constitutional standards the defendant believes are applicable. The defendant, therefore, has failed to adequately brief this claim.

Our review of the trial court's memorandum of decision and the record before that court reveals that the record is inadequate to review this claim of error. Many of the standards for first amendment analysis are highly fact specific. See *Gleason* v. *Smolinski*, supra, 319 Conn. 418–21, 440; *Woodcock* v. *Journal Publishing Co.*, 230 Conn. 525, 535, 646 A.2d 92 (1994), cert. denied, 513 U.S. 1149, 115 S. Ct. 1198, 130 L. Ed. 2d 1066 (1995); *Knize* v. *Knize*, 121 Conn. App. 787, 790 n.1, 998 A.2d 198 (2010).[7] Without adequate briefing, we cannot determine the applicable legal standard for the first amendment claim; therefore, we cannot determine what evidence would support a first amendment claim. The defendant never asserted before the trial court that his actions were protected by the first amendment, which further hampers our analysis of the record.[8] During the evidentiary hearing, neither the court nor the plaintiff

had the opportunity to develop the record with an eye to demonstrating whether the defendant's actions were constitutionally protected. The record is therefore inadequate.

An additional reason for the inadequacy of the record is the defendant's sudden departure from the proceedings. Having represented himself in prosecuting his application against the plaintiff; see footnote 4 of this opinion; he then exited the proceedings before he could be called by the plaintiff to testify.[9]

On the basis of all of the foregoing, we conclude that the defendant has not satisfied the first prong of *Golding* because the record is inadequate for our review. Therefore, even if the defendant had adequately briefed his first claim, we have no basis on which to review it.

## II

### SUFFICIENCY OF EVIDENCE

The defendant also claims that the trial court lacked sufficient evidence to find that he had engaged in conduct constituting stalking in the second degree in violation of subdivisions (1) and (2) of § 53a-181d (b). We disagree.

We first set forth our standard of review. The standard of review applicable to domestic relations cases applies to § 46b-16a cases. See *Kayla M.* v. *Greene*, 163 Conn. App. 493, 504,    A.3d    (2016); *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 111 n.3, 89 A.3d 896 (2014). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Citation omitted; internal quotation marks omitted.) *Princess Q. H.* v. *Robert H.*, supra, 111–12.

"If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Further, a court's inference of fact is not reversible unless the inference was arrived at unreasonably. . . . We note as well that [t]riers of fact must often rely on circumstantial evidence and

draw inferences from it. . . . Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Moreover, it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Emphasis omitted; internal quotation marks omitted.) *Palkimas* v. *Fernandez*, 159 Conn. App. 129, 133–34, 122 A.3d 704 (2015).

Section 46b-16a (a) provides in relevant part: "Any person who has been the victim of . . . stalking, as described in [section] . . . 53a-181d . . . may make an application to the Superior Court for relief under this section . . . ." Subsection (b) of § 46b-16a provides in relevant part: "If the court finds that there are reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order under this section and will continue to commit such acts or acts designed to intimidate or retaliate against the applicant, the court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant. . . ."

Section 53a-181d (b) provides: "A person is guilty of stalking in the second degree when: (1) Such person knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for such person's physical safety or the physical safety of a third person; or (2) Such person intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person that would cause a reasonable person to fear that such person's employment, business or career is threatened, where (A) such conduct consists of the actor telephoning to, appearing at or initiating communication or contact at such other person's place of employment or business, provided the actor was previously and clearly informed to cease such conduct, and (B) such conduct does not consist of constitutionally protected activity."

The defendant argues regarding § 53a-181d (b) (1) that the court lacked sufficient evidence that the plaintiff had been placed in fear of his safety or that of a third person. The defendant asserts that the only finding related to this element was that the defendant complained to school board members of the district in which the plaintiff's son attends school that the plaintiff was a danger to children. To the contrary, after specifically describing the school board incident, the court found that "[t]his incident, and other alarming and irrational conduct detailed herein, engaged in by [the defendant], has reasonably caused [the plaintiff] to fear that he was

being 'hunted' by [the defendant] and to take certain precautions, including obtaining a post office box, registering his new car in his wife's premarital name, and hiring an Internet company to delete any derogatory information about him that was electronically posted." The defendant contends that there was "not a scintilla of evidence presented to the court that the defendant is or ever has been physically dangerous to anyone." Despite this assertion, we find the trial court possessed sufficient evidence, after listening to two days of testimony and examining a variety of exhibits, to conclude that a reasonable person in the plaintiff's position would have cause to fear for his own or a third person's physical safety, even if the plaintiff did not produce evidence of past physical violence committed by the defendant.[10] See *State* v. *Russell*, 101 Conn. App. 298, 321, 922 A.2d 191 (reasonable for obsessive behaviors to cause victim to fear for safety), cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

The defendant argues regarding § 53a-181d (b) (2) that there is no evidence that the defendant telephoned, appeared at, or initiated communication or contact at the plaintiff's place of employment or business. The trial court had sufficient evidence to conclude that as the plaintiff worked as a consultant, the places of employment or business of the plaintiff included the conference held by the Los Angeles Police Department, potential clients, and the publication Psychology Today. The plaintiff was paid for some consulting work for the school board, but his service on the school safety board was voluntary, as was his service on the Connecticut Board of Firearms Permit Examiners. Nonetheless, even these voluntary positions were related to his profession, and the court possessed sufficient evidence to conclude that the defendant's statements could have affected the plaintiff's employment opportunities. The court's finding that the defendant "embarked upon a course of conduct, the purpose of which was to impugn [the plaintiff's] professional competence, humiliate and degrade him as a person and thereby adversely affect, if not destroy, his ability to make a living from his chosen profession as a clinical forensic psychologist, who specializes in threat assessments for government and corporate entities" was not clearly erroneous.

The defendant also contends that there was no evidence that the defendant was ever told to cease his communications. In contrast, the trial court specifically found that "despite this court's cautionary advisement on April 8, 2015, and despite [a police officer's] warning to [the defendant] on April 11, 2015, [the defendant] sent a second e-mail to [the organizer of the Los Angeles Police Department conference] and attached thereto his application and all of the documents that he submitted therewith. Referring to [the plaintiff], [the defendant], 'as a great matter of public concern,' warned [the organizer]: 'This man has no business advising public agen-

cies such as police departments.' . . . In light of that action by [the defendant] and the course of conduct described herein, this court finds, pursuant to [§ 46b-16a], that there is reasonable cause to believe [the defendant] is likely to continue acts that are designed to intimidate or retaliate against [the plaintiff], a finding that is statutorily mandated and is a prerequisite to the granting of the relief sought by [the plaintiff]." The defendant fails to analyze whether the court had sufficient evidence for these findings; having reviewed the evidence referenced by the court and the transcript, we find that it did. The court had copies of multiple e-mails sent by the defendant, it had police reports, and it heard the testimony of the plaintiff, all providing support for these findings. In addition, as previously noted, the defendant, who had represented himself during the first day of the hearing and during the morning of the second day of the hearing, absented himself on the afternoon of the second day of the hearing without testifying and before the plaintiff could call him as a witness. The court noted it could draw an adverse inference from this decision. See *In re Samantha C.*, 268 Conn. 614, 635, 847 A.2d 883 (2004) ("The privilege [against self-incrimination] does not, however, forbid the drawing of adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. The prevailing rule is that the fifth amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." [Internal quotation marks omitted.])

The defendant also makes passing reference to the requirement in § 53a-181d (b) (2) that the conduct not consist of constitutionally protected activity, which, as we previously stated, he has failed to brief adequately and regarding which he has failed to present a sufficient record. Moreover, § 53a-181d (b) (1) does not contain this requirement, and the conduct related to that section represents a separate and independent basis for granting the protective order.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interest of the applicant for a protective order, we decline to identify the applicant or others through whom the applicant's identity may be ascertained.

[1] To the extent that the defendant also made passing references to article first, §§ 3 and 14, of the Connecticut constitution in his brief to this court, we deem any claim related thereto abandoned.

[2] General Statutes § 46b-16a provides in relevant part: "(a) Any person who has been the victim of sexual abuse, sexual assault or stalking, as described in sections 53a-181c, 53a-181d and 53a-181e, may make an application to the Superior Court for relief under this section, provided such person has not obtained any other court order of protection arising out of such abuse, assault or stalking and does not qualify to seek relief under section 46b-15.

"(b) . . . If the court finds that there are reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order under this section and will continue to commit such acts or acts designed to intimidate or retaliate against the applicant, the court, in its discretion, may make such orders as it deems appropriate for the protec-

tion of the applicant. . . ."

[3] General Statutes § 53a-181d provides: "(a) For the purposes of this section, 'course of conduct' means two or more acts, including, but not limited to, acts in which a person directly, indirectly or through a third party, by any action, method, device or means, (1) follows, lies in wait for, monitors, observes, surveils, threatens, harasses, communicates with or sends unwanted gifts to, a person, or (2) interferes with a person's property.

"(b) A person is guilty of stalking in the second degree when:

"(1) Such person knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for such person's physical safety or the physical safety of a third person; or

"(2) Such person intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person that would cause a reasonable person to fear that such person's employment, business or career is threatened, where (A) such conduct consists of the actor telephoning to, appearing at or initiating communication or contact at such other person's place of employment or business, provided the actor was previously and clearly informed to cease such conduct, and (B) such conduct does not consist of constitutionally protected activity.

"(c) Stalking in the second degree is a class A misdemeanor."

[4] The defendant had also filed an application for a protective order on March 27, 2015, which the trial court denied when it granted the plaintiff's application. Therefore, we will refer to the parties as plaintiff and defendant in keeping with their status on the application of the plaintiff, Stacy B.

[5] Our Supreme Court in *State* v. *Elson*, supra, 311 Conn. 754–55, held that an appellate court may review a claim under *Golding* if the appellant has clearly demonstrated that the requirements of *Golding* are met, even if the appellant has failed to specifically request *Golding* review and brief how *Golding*'s requirements are met. Id., 755 (defendant's claim "otherwise was properly briefed, identified relevant constitutional authorities, and was founded on an adequate record for review"). In the present case, the defendant failed to brief in a manner consistent with *Golding* to present an analysis of the relevant substantive first amendment law and its application to the facts of this case.

[6] We note that additional first amendment doctrines may be applicable in the present case that were not mentioned in *Gleason.*

[7] The applicable first amendment standard determines what factual determinations are necessary. If the standards for intentional infliction of emotional distress or defamation are applicable, a first amendment analysis requires findings regarding whether the matter in question was one of public concern, whether the plaintiff was a public official, and whether the defendant had knowledge of, or was reckless or negligent regarding, the falsity of the statements he made. See *Gleason* v. *Smolinski*, supra, 319 Conn. 418–21 (intentional infliction of emotional distress related to matter of public concern); id., 440 (defamation related to private individual touching on matter of public concern); *Woodcock* v. *Journal Publishing Co.*, supra, 230 Conn. 535 (defamation related to public official); *Knize* v. *Knize*, supra, 121 Conn. App. 790 n.1 (defamation related to private individual).

[8] The defendant asserted before this court that he was prevented from making a first amendment claim before the trial court because the trial court did not permit posttrial briefs, but our review of the record demonstrates otherwise. The following colloquy occurred between the defendant's attorney and the court:

"[The Defendant's Counsel]: Your Honor, does Your Honor want a brief or anything of that sort?

"[The Court]: Nope, absolutely not. And I may order that matter will be continued.

"[The Defendant's Counsel]: Very well, that's understood."

We do not interpret this exchange as indicating that the defendant was barred from presenting an argument. The defendant inquired whether the court would want a brief; he did not assert that there were additional matters he wanted to brief. The defendant did not file a motion to reargue following the trial court's judgment, and as part of his appeal, he has not requested articulation of the court's decision.

[9] The court inquired into the plaintiff's intention to call the defendant as a witness in the following colloquy:

"The Court: Well, I presume at some point you're going to ask [the defendant] whether he was the author of what you're about to show me; correct?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: Then maybe we'll take a look at it. So I'll defer ruling on

that. Most lawyers aren't going to take an oath in a court of law and lie.

"[The Plaintiff's Counsel]: It wouldn't be the first time.

"The Court: Well. I also am the judge of credibility, sir, as you all know."

The defendant subsequently departed during the luncheon recess.

[10] The court referenced both evidence admitted at the hearing and documents submitted with the parties' petitions. The parties agreed that, pursuant to § 46b-16a, the court could review and consider the documents submitted by both parties with their applications.