******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

C. A. *v.* G. L.*
(AC 43139)

Lavine, Elgo and Alexander, Js.**

*Syllabus*

The defendant appealed to this court from the judgment of the trial court granting the plaintiff's application for a civil protection order filed pursuant to statute (§ 46b-16a). The defendant and the plaintiff were neighbors in a condominium association and for nearly two decades they have had a contentious relationship. The defendant had an ongoing litigation action against the plaintiff and other members of the association. The plaintiff's application for a civil protection order alleged that the defendant had threatened her. On appeal, the defendant claimed that the trial court erred in finding that reasonable grounds existed to believe that he committed, and would continue to commit, acts of stalking, which constituted the grounds for the civil protection order. *Held* that the trial court did not abuse its discretion in concluding that the defendant's conduct and statements could be interpreted as threats to the plaintiff's physical safety, as the court had an adequate basis on which to find that the defendant's escalating behavior met the statutory criteria to issue a civil order of protection; the record demonstrated that the parties had a toxic relationship, they were locked in adversarial litigation, the defendant left messages on the plaintiff's door on a frequent basis in an unwanted and harassing manner, causing her to call the police, and the defendant's temper was escalating, and, thus, the court reasonably found that the defendant's statements, including his comment that he was "coming for" the plaintiff, could be interpreted in such a way as to cause the plaintiff to fear for her physical safety; moreover, contrary to the defendant's argument, § 46b-16a did not require that there be prior threats or instances of physical violence for a party to reasonably fear for her physical safety.

Argued September 17—officially released December 15, 2020

*Procedural History*

Application for a civil protection order, brought to the Superior Court in the judicial district of New London and tried to the court, *Knox, J.*; judgment granting the application, from which the defendant appealed to this court. *Affirmed.*

*Cody A. Layton*, with whom was *Drzislav (Dado) Coric*, for the appellant (defendant).

*Opinion*

LAVINE, J. The defendant, G. L., appeals from the judgment of the trial court granting a civil protection order in favor of the plaintiff, C. A.[1] On appeal, the defendant claims that the trial court erred in finding that reasonable grounds existed to believe that he committed, and would continue to commit, acts of stalking constituting grounds for the issuance of a civil protection order. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties are longtime neighbors who live one floor apart in a condominium association (association). For nearly two decades, they have had a contentious relationship. At all relevant times, the defendant was engaged in litigation against the plaintiff and other members of the association. On May 1, 2019, the plaintiff filed an application for a civil protection order, pursuant to General Statutes § 46b-16a,[2] alleging that the defendant had threatened her on April 22 and 23, 2019. She subsequently withdrew this application on May 13, 2019. On May 17, 2019, however, after speaking to the police, the plaintiff again filed an application for a civil protection order.

The court held an evidentiary hearing on the plaintiff's application on May 28, 2019.[3] At the conclusion of the hearing, the court granted the application and ordered that the defendant "not assault, threaten, harass, follow, interfere [with], or stalk" the plaintiff for a six month period.[4]

The court found that the parties had a difficult ongoing relationship and that the defendant was "not an easy neighbor to have," citing "the fact that some of [his] neighbors had to come testify." The court found that "every time that [the defendant is] present, [the plaintiff] feels threatened. . . . Whether it is how you raise your voice. Whether you're following her in the course of a communication. Whether she just appears and you engage her in an angry dialogue."

The court further found that the defendant's aggressive behavior was "actually increasing and escalating with regard to [the plaintiff]." His "anger . . . with regard to the litigation is escalating well beyond the litigation, in that, [the plaintiff] has cause to be concerned by [the defendant's] threatening behavior, which seems to be persisting over a course of time, but actually has persisted more recently . . . ." In finding that the defendant's threatening behavior was escalating recently, the court relied on several threatening statements that he had made to the plaintiff, as well as the fact that the plaintiff had called the police on May 17, 2019.

The court found that the defendant had threatened the plaintiff on April 23, 2019, by stating that he was "coming for" her.[5] The plaintiff installed security cameras around her condominium unit on May 1, 2019, to

which the defendant objected. The defendant left notes and documents, concerning the litigation that he had initiated against the plaintiff, on the plaintiff's door on a daily basis. The plaintiff occasionally posted messages relating to the litigation on the defendant's door. In granting the motion, the court highlighted the fact that "[the plaintiff] actually called the police [on May 17, 2019], because of her concerns of [the defendant's] threatening behavior." The plaintiff filed her application for a civil protection order that day. On her return from the courthouse, the plaintiff overheard the defendant say that "[the plaintiff had been] harassing people for years with [her] tits and . . . cocktail uniform." At that point, the plaintiff dreaded going home and began carrying Mace.

The day before the hearing, on May 27, 2019, the plaintiff overheard the defendant talking to a neighbor about "all the things he was going to do to me . . . and one's going to be, I'm going to lose my job." The defendant did not know that the plaintiff could hear him when he made the statement. After the defendant made the statement, the plaintiff and the defendant had a heated exchange.

After the plaintiff rested at trial, the defendant moved to dismiss the case, arguing that the plaintiff had not established, pursuant to the definition of stalking set forth in § 46b-16a (a), "two or more wilful acts perform[ed in] a threatening predatory or disturbing matter," and characterizing the matter as "neighbors quibbling over issues . . . with [the] condo association." The court denied the defendant's motion.

Ultimately, the court found that there were reasonable grounds to believe that the defendant had "committed acts constituting grounds for issuance of a protective order under [§ 46b-16a], and that [he would] continue to commit such acts or acts designed to intimidate or retaliate against the applicant." The court thereupon found that the plaintiff had met her burden and issued a civil order of protection pursuant to § 46b-16a for a period of six months, until November 28, 2019. This appeal followed.

The defendant argues that the evidence was insufficient to warrant the court's issuance of a civil order of protection against him. The defendant claims that his statements and messages to the plaintiff did not constitute "two or more wilful acts [performed] in a threatening, predatory, or disturbing manner that caused [the plaintiff] to reasonably fear for her physical safety." For that reason, the defendant claims that the court abused its discretion in granting the order of protection. We do not agree.

We begin our analysis by setting forth the relevant legal principles and applicable standard of review. "We apply the same standard of review to civil protection

orders under § 46b-16a as we apply to civil restraining orders under General Statutes § 46b-15. Thus, we will not disturb a trial court's orders unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) *Kayla M.* v. *Greene*, 163 Conn. App. 493, 504, 136 A.3d 1 (2016).

"The court's discretion, however, is not unfettered; it is a legal discretion subject to review. . . . [D]iscretion imports something more than leeway in [decision making]. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice . . . ." (Internal quotation marks omitted.) *Harris* v. *Neale*, 197 Conn. App. 147, 157, 231 A.3d 357 (2020). "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . as [t]he conclusions which we might reach, were we sitting as the trial court, are irrelevant." (Citations omitted; internal quotation marks omitted.) *Rostain* v. *Rostain*, 214 Conn. 713, 715–16, 573 A.2d 710 (1990).

Section 46b-16a provides in relevant part: "Any person who has been the victim of . . . stalking may make an application to the Superior Court for relief under this section . . . . If the court finds that there are reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order under this section and will continue to commit such acts or acts designed to intimidate or retaliate against the applicant, the court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant."

Section 46b-16a (a) defines stalking as "two or more wilful acts, performed in a threatening, predatory or disturbing manner of: Harassing, following, lying in wait for, surveilling, monitoring or sending unwanted gifts or messages to another person directly, indirectly or through a third person, by any method, device or other means, that causes such person to reasonably fear for his or her physical safety."

"The standard to be applied in determining the reasonableness of the victim's fear in the context of the crime of stalking is a subjective-objective one. . . . As to the subjective test, the situation and the facts must be evaluated from the perspective of the victim, i.e., did she in fact fear for her physical safety. . . . If so, that fear must be objectively reasonable, i.e., a reasonable person under the existing circumstances would fear for his or her physical safety." (Citations omitted; internal quotation marks omitted.) *State* v. *Russell*, 101 Conn. App. 298, 319, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

"[A]n applicant for a civil protection order on the basis of stalking is required to prove only that there are reasonable grounds to believe that a defendant stalked and will continue to stalk . . . ." *Kayla M.* v. *Greene*, supra, 163 Conn. App. 503.[6] A finding of reasonable grounds to believe stalking occurred is equivalent to a finding of probable cause that stalking occurred. Id., 506. "While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . In dealing with probable cause . . . as the very name implies, we deal with probabilities." (Internal quotation marks omitted.) Id., 506–507.

Applying the aforementioned principles, the trial court found that there was sufficient evidence reasonably to conclude that there were grounds to issue a civil protection order. On appeal, the defendant's arguments all center on the assertion that none of his conduct could cause the plaintiff to reasonably fear for her safety.[7] He first argues that his statements to the plaintiff did not constitute stalking because he had never used or threatened physical force against the plaintiff. He further argues that both his comment about the plaintiff losing her job and his comment about "coming for" the plaintiff could only be construed by the plaintiff as relating to the litigation, rather than as physical threats.[8] Similarly, he argues that the documents and the notes he left on the plaintiff's door related solely to the litigation between them and it was thus reasonable for him to do so as a means of communicating in regard to the lawsuit.[9] We do not agree that the court abused its discretion when it decided that, under these facts, the defendant had stalked the plaintiff.

In considering the defendant's statements and the pattern of conduct in the month prior to the hearing, the court found that the plaintiff and the defendant had a contentious relationship and that the circumstances indicated that the defendant's anger was increasing. The court's conclusion must be evaluated with the nature

and the history of this troubled relationship in mind. Context is important. The court cited the defendant's April 23, 2019 statement that he was "coming for" the plaintiff, his May 17, 2019 statement that "[the plaintiff had been] harassing people for years with [her] tits and . . . cocktail uniform," and his May 28, 2019 statement that the plaintiff would lose her job.[10] The court also cited the fact that the plaintiff had called the police on May 17, 2019, to report the defendant's leaving notes on her door daily. Given these findings, which the defendant does not challenge, the court acted well within its discretion to find the defendant's anger had "persisted more recently" and was "escalating well beyond the litigation." Consequently, the court reasonably could conclude that the plaintiff reasonably feared for her physical safety as a result of the defendant's stalking, as required by § 46b-16a (a).[11]

The defendant argues that the trial court could not conclude that the statutory element that a person reasonably fear for her physical safety was met when there was no threat or suggestion of physical harm. He points to the evidence that he had never used or explicitly threatened physical force against the plaintiff. At the outset, we note that the court could have reasonably construed the defendant's April 23 statement that he was "coming for" her as a physical threat under the statute. Even if we were to accept the defendant's contextual argument that this statement could not be construed as a threat due to the litigation between the parties, however, the statute does not require that there be prior threats or instances of physical violence for a party to reasonably fear for her physical safety. Our conclusion is consistent with previous decisions of this court.[12] For example, in *Stacy B.* v. *Robert S.*, 165 Conn. App. 374, 388, 140 A.3d 1004 (2016), the defendant contended that "there was not a scintilla of evidence presented to the court that the defendant is or ever has been physically dangerous to anyone." (Internal quotation marks omitted.) Nonetheless, this court concluded that, after two days of testimony, the trial court had a sufficient basis on which to conclude that "a reasonable person in the plaintiff's position would have cause to fear for his own or a third person's physical safety, even if the plaintiff did not produce evidence of past physical violence committed by the defendant." Id. (Footnote omitted.) In *Kayla M.* v. *Greene*, supra, 163 Conn. App. 506, this court held, with regard to the objective prong of the test, that "[t]o establish a stalking violation, [p]roof of verbal threats or harassing gestures is not essential . . . . [D]efendants' obsessive behaviors, *even in the absence of threats of physical violence*, [may] reasonably [cause] their victims to fear for their physical safety." (Emphasis added; citations omitted; internal quotation marks omitted.)

In the present case, the court found that the defendant had "anger . . . with regard to the litigation,"

raised his voice, "engage[d] [the plaintiff] in . . . angry dialogue . . . follow[ed] the plaintiff in the course of . . . communication[s]," and generally was known to be a difficult neighbor. The court found that this anger was persisting and escalating. The court was entitled to credit the testimony of the plaintiff's witnesses in reaching its conclusion that there was a reasonable basis for the plaintiff to feel harassed and fearful of physical harm.

The defendant further contends that the statements he made, as well as his conduct of leaving notes on the plaintiff's door, must be viewed in the context of the litigation between him and the plaintiff. In his brief and at oral argument, he argued that his statements that the plaintiff would lose her job, and that he was coming for her, can *only* be interpreted as relating to the legal proceedings between the two parties. Thus, he contends that it was unreasonable for the court to infer either that he intended to cause the plaintiff to fear for her physical safety, or that any such fear actually was reasonable on her part. We do not agree that the trial court abused its discretion by concluding that the plaintiff reasonably feared for her physical safety.[13] Taken together with the testimonial evidence of the parties' contentious relationship and the defendant's temper, which the court found to be escalating, the court reasonably found that the defendant's statements could be interpreted in such a way as to cause the plaintiff to fear for her physical safety. In *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 116, 89 A.3d 896 (2014), this court concluded that, although the defendant's conduct "might have been completely unrelated to stalking the plaintiff . . . [t]he court, however, was not presented with evidence of such a benign explanation, but heard ample evidence about the parties' stormy relationship and the fact that the plaintiff and the defendant were adverse parties in a civil action at the time of this occurrence."

In the present case, the court found, and the record demonstrates, that the parties had a toxic relationship, were locked in adversarial litigation, and the defendant had left messages on the plaintiff's door on a frequent basis. The court also found that the defendant's anger was "well beyond the litigation." The court therefore had an adequate basis on which to find that the defendant's escalating aggressive behavior met the statutory criteria to issue a civil order of protection. We therefore conclude that the court did not abuse its discretion in concluding that the defendant sent messages in an unwanted and harassing manner or that the defendant's statements could be interpreted as threats to the plaintiff's physical safety.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or

others through whom that party's identity may be ascertained.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff did not file a brief in this court. We therefore decide the appeal on the basis of the defendant's brief and the record.

[2] General Statutes § 46b-16a (a) provides in relevant part that "[a]ny person who has been the victim of . . . stalking may make an application to the Superior Court for relief under this section, provided such person has not obtained any other court order of protection arising out of such abuse, assault or stalking and does not qualify to seek relief under section 46b-15. . . ."

[3] The hearing considered only the application filed on May 17, 2019, which, alone, is the subject of the present appeal.

[4] Although the civil protection order has since expired, the defendant's appeal is not moot. See *Ellen S.* v. *Katlyn F.*, 175 Conn. App. 559, 561 n.2, 167 A.3d 1182 (2017) ("The expiration of a six month domestic violence restraining order issued pursuant to General Statutes § 46b-15 does not render an appeal from that order moot due to adverse collateral consequences. *Putman* v. *Kennedy*, 279 Conn. 162, 164–65, 900 A.2d 1256 (2006). We apply that principle to the order of civil protection here [under § 46b-16a].").

[5] In addition to this statement, the plaintiff contended in her May 17, 2019 application that, on April 22, 2019, "I was threatened by [the defendant] in the hallway of my condo association. He said my days are done. I'm all done. I'm going down."

[6] We note that *Kayla M.* was decided in 2016 when the statute still contained its previous definition of stalking. General Statutes (Rev. to 2015) § 46b-16a (a) provides in relevant part: "Any person who has been the victim of . . . stalking, *as described in sections 53a-181c, 53a-181d and 53a-181e,* may make an application to the Superior Court for relief under this section . . . ." (Emphasis added.) General Statutes (Rev. to 2015) § 53a-181d (b) sets forth the statutory definition of stalking, providing in relevant part: "A person is guilty of stalking in the second degree when . . . (1) Such person knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for such person's physical safety or the physical safety of a third person . . . ." In 2017, subsection (a) of § 46b-16a was amended to replace the references to General Statutes §§ 53a-181c, 53a-181d, and 53a-181e with its current definition of stalking. See Public Acts 2017, No. 17-99, § 1. The statutory change merely modifies the definition of stalking itself, and did not affect the applicable language of subsection (b), which provides in relevant part: "If the court finds that there are reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order under this section and will continue to commit such acts or acts designed to intimidate or retaliate against the applicant, the court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant. . . ." General Statutes § 46b-16a (b). Thus, *Kayla M.* is still applicable with respect to the general standard of proof § 46b-16a (b) requires, namely, that an applicant for a civil protection order "prove only that there are reasonable grounds to believe that a defendant stalked and will continue to stalk." *Kayla M.* v. *Greene*, supra, 163 Conn. App. 503.

[7] The defendant also claims that the court could not have found that he had intended the plaintiff to fear for her physical safety. His argument misses the point. The statute makes no mention of the defendant's *intent* with respect to the element that he caused the plaintiff to fear for her physical safety. Rather, the statutory language refers to "two or more *wilful acts,*" which cause a person to reasonably fear for his or her own physical safety. See General Statutes § 46b-16a (a).

[8] With respect to his statement that the plaintiff would lose her job, the defendant also argues that because it references employment, it is not relevant to her physical safety on its face. The court, however, referenced this statement as support for its conclusion that the defendant's overall pattern of behavior was persisting. Moreover, the defendant's other statement, that he was "coming for" her, could indeed be reasonably construed as relevant to her physical safety.

[9] The fact that a lawsuit was pending does not inoculate the defendant against the issuance of a civil order of protection. It is the fact of leaving the notes, not their content, that makes the conduct objectionable. Although the defendant had a right to communicate with the plaintiff, who was self-represented, regarding the litigation, that right does not extend to communications that are harassing or otherwise unlawful conduct. "[T]he mere exis-

tence of such a right or privilege does not automatically mean that an individual is permitted to exercise that right entirely unfettered and without adhering to reasonable legal restrictions." *S. A.* v. *D. G.*, 198 Conn. App. 170, 189, 232 A.3d 1110 (2020).

[10] The defendant argues that he made the May 17 and 27, 2019 statements to third parties and that he did not direct them to the plaintiff. The plaintiff, however, heard them. She additionally alleged statements that the defendant made directly to her in her application, including the April 23, 2019 statement. Whether made directly to the plaintiff or not, these statements all support the court's conclusion that the plaintiff's fear was objectively reasonable.

[11] The defendant argues that the plaintiff's engagement with him undercuts this conclusion. He notes that the plaintiff left occasional notes on his door, and that following the defendant's statement that the plaintiff would lose her job, the parties had a "heated discussion." These two points go to the weight of the evidence and do not preclude the court's conclusion. *See Kayla M.* v. *Greene*, supra, 163 Conn. App. 510 (rejecting husband's argument that plaintiff did not fear for her physical safety because she continued to interact with him, because there was sufficient evidence in record to support court's issuance of protective order).

The defendant also argues in his brief that "it cannot be overlooked that the plaintiff willingly withdrew her previous application for a civil order of protection, wherein these claims served as its basis. This act alone is conclusive evidence that the plaintiff did not fear for her safety." We find this argument unpersuasive. The plaintiff refiled her application, and the trial court reasonably could conclude, within its discretion, that she still reasonably feared for her safety on the basis of the defendant's conduct prior to withdrawing the initial application.

[12] We note that the cases discussed subsequently in this opinion were decided under a previous revision of the statute. See footnote 6 of this opinion. However, these cases all apply an objective standard of reasonableness for stalking which is sufficient to fulfill the current subjective-objective statutory threshold. See *Kayla M.* v. *Greene*, supra, 163 Conn. App. 510 (discussing purely objective standard of fear in General Statutes (Rev. to 2015) § 53a-181d).

[13] As previously discussed, we reject the defendant's attempt to read an intent requirement into the statute. See footnote 7 of this opinion.