### TOWN OF WINDHAM *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (SC 15961)

Callahan, C. J., and Borden, Berdon, Norcott and Peters, Js.

Argued January 14—officially released June 15, 1999

*Clifton A. Leonhardt*, chief counsel, with whom, on the brief, were *Mitchell W. Pearlman*, general counsel, and *Victor R. Perpetua*, appellate attorney, for the appellant (named defendant).

*Richard S. Cody*, for the appellee (plaintiff).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

PER CURIAM. After examining the record on appeal and considering the briefs and oral arguments of the parties, we have determined that the appeal in this case should be dismissed on the ground that certification was granted improvidently.[1]

The appeal is dismissed.

In this opinion CALLAHAN, C. J., and BORDEN, NORCOTT and PETERS, Js., concurred.

BERDON, J., dissenting. Article first, § 2, of the Connecticut constitution provides in part that "[a]ll political

---

[1] We granted the named defendant's petition for certification to appeal from the judgment of the Appellate Court; *Windham* v. *Freedom of Information Commission*, 48 Conn. App. 529, 711 A.2d 741 (1998); limited to the following issue: "Did the Appellate Court properly determine that the gathering of four members of the Windham board of selectmen to discuss an upcoming meeting of that board was not a 'meeting' for purposes of General Statutes § 1-21 because the four members did not constitute a quorum under General Statutes § 1-18a (b)?" *Windham* v. *Freedom of Information Commission*, 245 Conn. 913, 718 A.2d 18 (1998).

power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit . . . ." By refusing to consider the question that we certified, the majority of this court commits a silent act of violence against this portion of our constitution.

In an effort to hold our government accountable to the inherent authority of the people, the legislature enacted the Freedom of Information Act (act), General Statutes § 1-200 et seq. (formerly § 1-18a).[1] "The overarching legislative policy of the [act] is one that favors the open conduct of government and free public access to government records. . . . Our construction of the [act] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed. . . . In light of these principles, *the statutory definition of public meetings contained in [§ 1-200 (2)] must be read to limit rather than to expand the opportunities for public agencies to hold closed hearings.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Glastonbury Education Assn. v. Freedom of Information Commission*, 234 Conn. 704, 712–13, 663 A.2d 349 (1995).

In the present administrative appeal, the Appellate Court held that the act tolerates the following sequence of events: several members of a public agency conspire behind closed doors in order to hammer out a secret plot to determine a substantive decision that will be made at a subsequent public meeting. More specifically, the Appellate Court held that the act tolerated the actions of four members of the Windham board of selectmen (board), who conducted a secret meeting at which they conspired to go into executive session in

[1] Since the meeting at issue in the present case, minor technical changes have been made to the act; those changes are not relevant to the present case. In the interest of clarity, references herein are to the current revision of the act.

order to discuss a landfill contract (secret meeting).[2] At the public meeting that occurred the following day, this conspiracy was executed without a hitch.

The Appellate Court decided this case on the following basis: the selectpersons who convened the secret meeting did not constitute a quorum of the board and, therefore, there was no meeting within the meaning of the first sentence of § 1-200 (2).[3] *Windham* v. *Freedom of Information Commission*, 48 Conn. App. 529, 531, 711 A.2d 741 (1998). This holding contains two grave infirmities. As a matter of substantive law, it undermines the magnificent purpose of the act and, as the defendant freedom of information commission (commission) put it, brings us back to the politics of the "proverbial 'smoke filled room' . . . ." As a matter of procedure, this holding has nothing to do with this case. It was neither argued nor briefed before the commission, the trial court, or the Appellate Court. In fact, the trial court explained that "the [plaintiff] does not dispute that the [secret meeting] would fit into the general definition of meeting contained in the first sentence of [§ 1-200 (2)]."[4] *Windham* v. *Freedom of Information*

---

[2] It is highly significant that the agenda of the secret meeting consisted of forcing the board to go into executive session. By orchestrating an executive session—which is not open to the public—the four selectpersons who convened the secret meeting managed to conceal both the substance of the decision-making process surrounding the landfill contract and the means by which they took that process behind closed doors.

[3] The first sentence of General Statutes § 1-200 (2) provides: " 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power."

[4] Although the record before us is unclear on this point, it appears that the selectpersons who conspired at the secret meeting to go into executive session to discuss a landfill contract constituted a quorum of the landfill committee. For all we know, the entire landfill committee may have been present at the secret meeting. General Statutes § 1-200 (1) defines a "public agency" as, inter alia, "any . . . board . . . of any . . . political subdivi-

*Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV96005256S (March 20, 1997), p. 2. For these reasons, I would not reach this issue.

Instead, I would reverse the Appellate Court on the following ground, which has the benefit of actually having been litigated by the parties: the selectpersons are mistaken in their claim that the secret meeting is beyond the reach of the act because, pursuant to the second sentence of § 1-200 (2), a " '[m]eeting' shall not include . . . communication limited to notice of meetings of [a] public agency . . . ."[5] As the commission and the trial court both emphasized, the secret meeting "not only included communication of notice of an agenda item, but [also] discussion of why such [an] item needed to be considered in executive session, and reaching a consensus on an executive session. . . . A brief discussion as to the reasons necessitating an executive session was held.

"[The secret meeting was] clearly not limited to notice of an agenda item. The discussion considered the merits of the motion and gathered support for the motion." *Windham* v. *Freedom of Information Commission*, supra, Superior Court, Docket No. CV96005256S, p. 3.

As the trial court cogently pointed out, "the reasons why the landfill contract was to be considered in executive session should have been discussed in open public

sion of the state, *including any committee* of, or created by, any such . . . board . . . ." (Emphasis added.) This is probably why the plaintiff did not dispute that the secret meeting constituted a "meeting" within the meaning of the pertinent portion of the first sentence of § 1-200 (2): it represented an "assembly of a quorum of a multimember agency . . . ."

[5] Significantly, the Appellate Court declined to reach this issue. *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 531. From this silence, I infer that the Appellate Court was unable to devise even a plausible argument to the contrary, let alone a persuasive one.

session . . . . It is not consistent with the open conduct of public business when the public meeting is [preceded] by a closed door bipartisan rehearsal wherein substantive decisions (whether or not to move to executive session) are discussed and resolved." Id., 4.

In my view, neither the act nor our democracy can tolerate the conspiracy that occurred behind closed doors in the present case.

Accordingly, I dissent.