******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FIONA C. *v.* KEVIN L.*
(AC 38495)

DiPentima, C. J., and Mullins and Jongbloed, Js.

*Argued May 12—officially released July 12, 2016*

(Appeal from Superior Court, judicial district of
Danbury, Ozalis, J.)

*Bruce Seeliger*, for the appellant (defendant).

*Beverley Rogers*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Kevin L., appeals from the judgment of the trial court granting the application for a civil protection order pursuant to General Statutes § 46b-16a filed by the plaintiff, Fiona C. On appeal, the defendant raises interrelated claims that (1) the court improperly interpreted General Statutes § 53a-181d, the stalking in the second degree statute, and (2) under the proper interpretation of that statute, the plaintiff failed to present sufficient evidence to warrant the granting of her application for a civil protection order. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our discussion. On August 31, 2015, the plaintiff filed an application for an order of civil protection, alleging that she had been the victim of stalking. She requested that the court order that the defendant (1) not assault, threaten, abuse, harass, follow, interfere with or stalk the plaintiff, (2) stay away from her home, (3) not contact her in any manner, (4) stay 100 yards away from her and (5) be educated at a different educational facility from the one she attended, or be home schooled. The court granted the application and issued an ex parte civil protection order.

The court held a hearing on September 10, 2015. At the outset, the court noted that both the plaintiff and the defendant were under the age of eighteen. The plaintiff testified that she and the defendant attended the same school starting in the first grade. They were in the same class in the third grade, and according to the plaintiff's testimony, an incident occurred at that time. Specifically, the plaintiff testified that the defendant had threatened her by stating that he wanted to slit her throat. As a result, she felt scared and after telling her teacher about this event, the principal removed the defendant from the plaintiff's class. The plaintiff further testified that although the defendant eventually returned to her third grade class, there were no further threats made against her either that year or during the fourth and fifth grades when the parties were at the same school but in different classrooms. According to the plaintiff, during her sixth, seventh, eighth and ninth grade years, the defendant was enrolled in a different school. There was no interaction between the two during that time.

In the tenth grade, the plaintiff transferred to an alternative high school with a single classroom, a kitchen and an office. Less than ten students attend this school. In the spring of 2015, the plaintiff learned that the defendant would be transferred to her school when the new school year started in August, 2015. After hearing this, the plaintiff, who still feared the defendant, became

concerned. She informed the coordinator of the alternative school of her past history with the defendant and her present concerns for her safety.

On the third day of school, both the plaintiff and the defendant were present. The plaintiff informed the administration that she could not attend school if the defendant was present. The plaintiff then went home. The direct examination concluded with the plaintiff's testimony that the defendant had a reputation for threatening other students and "was not a good person."

On cross-examination, the plaintiff acknowledged that the last time she had been threatened by the defendant was in the third grade. Upon questioning from the court, the plaintiff indicated that the defendant's threatening to "kill" other students and his bullying of other students occurred throughout elementary school. The plaintiff heard of threats made by the defendant against others while in high school. The plaintiff's father then testified, after which the plaintiff's counsel rested.

During a colloquy with the court, the plaintiff's counsel conceded that there had been no recent interactions between the plaintiff and the defendant. After a recess, the court concluded that it needed further evidence in order to reach a decision on the plaintiff's application.[1] The court continued the order of protection until the next court date.

On October 7, 2015, the hearing resumed. The court heard testimony from various school administrators. During a recess, the court reviewed, in camera, certain school records of the defendant.[2] After the hearing resumed, the court noted the following on the record: "The [school] records reflect threatening statements by [the defendant] in the second grade, third grade, [and] fourth grade. That [the defendant] brought a weapon to school during what appears to be third grade. It was a knife.

"That in fourth grade there were threatening statements made according to the records and that it—it was alleged in the records that he showed a weapon to the staff.

"Also, the records indicate and reflect that [the defendant] has made threats to peers, and that was [during a later time period]. And that he brought a knife to school in the seventh grade, and that's reflected in the record, and that was in February of 2012 that that action occurred.

* * *

"But I will note for the record that in the—for the 2015 period, there were—actually beginning in November, 2014, there were at least four occasions noted in the record in which some event occurred. Some statements were made regarding [the defendant] that at least one of the teachers viewed to be concerning, and that one

of the matters was referred to the dean. Because of the cryptic nature of the notes, I have no idea what that refers or relates to."

After hearing closing arguments from counsel, the court rendered an oral decision granting the plaintiff's application for a civil protection order. Specifically, the court found reasonable grounds to believe that the defendant had committed stalking in the second degree pursuant to § 53a-181d and that he would continue to commit such acts or acts designed to intimidate or retaliate against the plaintiff. The court based its findings on the school records that it had reviewed and the defendant's "continuing course of conduct toward peers and weapons being brought to school."

The defendant's counsel asked for a clarification of the court's decision, specifically, what two acts constituted the course of conduct required under the stalking statute. The court replied: "I found the initial acts of him threatening to slit her throat and bringing a knife into the school, and I find all of the continuing acts that he did threatening his peers and bringing a weapon into school. It was a consistent course of conduct toward peers that are in his immediate vicinity."

The defendant's counsel then further inquired: "Okay. So you—so just for—so you're—in terms of [the plaintiff], you're finding just one incident where he threatened to slit her throat?" The court responded: "Threatened to slit her throat and then his continuous course of conduct threatening other students . . . bringing weapons to school, threatening to harm other students. It has continued continuously from second grade till it appears to recently." This appeal followed.

On appeal the defendant claims, inter alia, that the court misconstrued the course of conduct element set forth in § 53a-181d and that there was insufficient evidence to grant the civil protection order on the basis of stalking in the second degree.[3] We agree with the defendant.

The first component of the defendant's claim is that the court improperly construed the course of conduct element of stalking in the second degree, which was the predicate offense establishing the plaintiff's eligibility for a civil protection order. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be

considered." (Citation omitted; internal quotations marks omitted.) *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015); see also *State* v. *Wright*, 320 Conn. 781, 801, 135 A.3d 1 (2016). We note that "[i]t is our duty to interpret statutes as they are written. . . . Courts cannot, by construction, read into statutes provisions which are not clearly stated." (Internal quotation marks omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 152, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, A.3d (2016).

This court recently has interpreted § 46b-16a, and that case provides a roadmap for our analysis in the present matter. In *Kayla M.* v. *Greene*, 163 Conn. App. 493, 503, A.3d (2016), we concluded that "an applicant for a civil protection order on the basis of stalking is required to prove only that there are reasonable grounds to believe that a defendant stalked and will continue to stalk, as described in §§ 53a-181c, 53a-181d *or* 53a-181e." (Emphasis in original.)

We then addressed the defendants' claim of insufficient evidence. Id. At the outset, we noted that the same standard of review used in cases involving civil restraining orders under General Statutes § 46b-15 applies in cases involving § 46b-16a. Id., 504. "Thus, we will not disturb a trial court's orders unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) Id. The deferential standard of review, does not apply, however, to a trial court's interpretation and application of the law to the facts. Id. "It is axiomatic that a matter of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) Id.; see also *Stacy B.* v. *Robert S.*, 165 Conn. App. 374, 386, A.3d (2016).

We proceeded to interpret the elements of stalking in the second degree, one of the underlying predicate offenses set forth in § 46b-16a (a), and the specific offense for which the court granted the plaintiff's application for a civil protection order. "Stalking in the second degree under § 53a-181d (b) (1) includes the following elements: (1) that the respondent acting knowingly, (2) that the respondent engaged in a course of conduct directed at the victim, and (3) that such conduct would cause a reasonable person to fear for his or her physical safety or for the physical safety of a third person." *Kayla M.* v. *Greene*, supra, 163 Conn. App. 505. We then recited the statutory definition of "course of conduct" as follows: "A course of conduct is defined as two or more acts, including, but not limited to, acts in which a person directly, indirectly or through a third party, by any action, method, device or means, (1) follows, lies in wait for, monitors, observes, surveils, threatens, harasses, communicates with or sends unwanted gifts to, a person, or (2) interferes with a person's property. General Statutes § 53a-181d (a)."

(Internal quotation marks omitted.) Id., 505–506.

In the present case, the court determined that there were reasonable grounds to believe that the defendant had violated § 53a-181d. The court based this determination on the defendant's threat to harm the plaintiff made when they were in the third grade, the defendant's continuing course of conduct of threats made toward peers, and the weapons that he brought to school, which the court found consistent with the plaintiff's testimony. Upon a request for clarification from the defendant's counsel, the court explained that the third grade incident and his threats toward his peers satisfied the course of conduct elements contained in § 53a-181d (b) (1).

Section 53a-181d (a) defines the phrase "course of conduct" as requiring "two or more acts." A person violates this statute, inter alia, when he or she engages a course of conduct *directed at a specific person*. See General Statutes § 53a-181d (b) (1). Reading these two parts of the stalking in the second degree statute together, we conclude that the two or more acts must be directed at a specific person, in this case the plaintiff. The trial court employed a broader interpretation in its analysis. Specifically, it determined that the "course of conduct" was met by the defendant's past threat to slit the plaintiff's throat and his later threats made toward *other* students.

The court's interpretation ignores the plain language of § 53a-181d (a) (1) that the course of conduct be directed at a specific person. We iterate that we are bound to interpret the statute *as it is written* and cannot ignore the words used by the legislature. "It is a basic tenet of statutory construction that the legislature does not intend to enact meaningless provisions. . . . Every word and phrase [in a statute] is presumed to have meaning, and we do not construe statutes so as to render certain words and phrases surplusage." (Internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 614, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008).

We find support for this interpretation in our case law. For example, in *Sherman* v. *Niewola*, Superior Court, judicial district of Tolland at Rockville, Docket No. CV-15-4022631-S (April 29, 2015), the Superior Court noted that one of the elements of stalking in the second degree is that the perpetrator embark on a course of conduct directed toward an applicant for a civil protection order. In other words, the course of conduct, statutorily defined as two or more acts, must be directed at the same person. See also *Stacy B.* v. *Robert S.*, Superior Court, judicial district of Waterbury, Docket No. CV-15-4034547-S (May 28, 2015) (court found probable cause that perpetrator committed crime of stalking given his course of conduct directed at applicant for civil protection order), aff'd, *Stacy B.* v. *Robert S.*, supra,

165 Conn. App. 374; see generally *State* v. *Arthurs*, 121 Conn. App. 520, 524–25, 997 A.2d 568 (2010), cert. denied, 310 Conn. 957, 82 A.3d 626 (2013); *State* v. *Culmo*, 43 Conn. Supp. 46, 60, 642 A.2d 90 (1993).[4]

Finally, we note that in *Kayla M.* v. *Greene*, supra, 163 Conn. App. 516, we concluded that the court properly granted the plaintiff's application for a civil protection order against the defendants. In reviewing the claim of one of the defendants, we agreed that she had "knowingly engaged in a course of conduct [i.e., multiple acts] *directed at the* [*plaintiff*] that would cause a reasonable person to fear for such person's physical safety." (Emphasis added; internal quotation marks omitted.) Id., 514. For these reasons, we conclude that the trial court misconstrued the course of conduct element contained in the stalking in the second degree statute.

We next turn to the second component of the defendant's appellate argument, that is, under a proper interpretation of the § 46b-16a, there was insufficient evidence for the court to grant the plaintiff's application for a civil protection order. We agree with the defendant that the court's finding regarding the course of conduct element of the predicate offense of stalking in the second degree was not supported by the evidence, and, therefore, was improper. We conclude, therefore, that the court abused its discretion in granting the application for a civil protection order. See *Kayla M.* v. *Greene*, supra, 163 Conn. App. 504.

The plaintiff presented evidence of the threat made against her by the defendant when they both were in the third grade. We assume, arguendo, that his statement constituted an act in which he threatened a specific person. See General Statutes § 53a-181d (a) and (b) (1). The dispositive inquiry is whether there was evidence of a second act directed against the plaintiff necessary to satisfy the "course of conduct" element of § 53a-181d. We conclude that there was no evidence of a second act directed against the plaintiff.

The plaintiff testified that there had been no interactions with the defendant when they were in the fourth, fifth, sixth, seventh, eighth, ninth or tenth grades. In its oral decision, the court focused on the defendant's conduct with respect to his peers at school but, aside from the third grade incident, his conduct was not directed toward the plaintiff. Upon a request for clarification, the court stated the basis for its finding of a course of conduct as follows: "I found the initial act of him threatening to slit her throat and bringing a knife into school,[5] and I find all of the continuing acts that he did threatening his peers and bringing a weapon into school including a knife. *It was a consistent course of conduct toward peers that are in his immediate vicinity.*" (Footnote added.) The court then iterated: "Threatened to slit her throat and then his continuous course of conduct threatening other students – bringing

weapons to school, threatening to harm other students. It has continued continuously from second grade till it appears to recently."

After a thorough review of the record, we conclude that there was no evidence of a second act by the defendant directed specifically at the plaintiff. The court relied on the defendant's actions against his peers in his immediate vicinity. There was no finding that the plaintiff was part of this group. Moreover, the plaintiff's own testimony would not support such a finding. Simply put, the record does not support a finding that the defendant had engaged in a course of conduct directed against the plaintiff. As a result, the court's determination that the defendant had committed behavior constituting stalking in the second degree was improper. We conclude, therefore, that the court abused its discretion in granting the application for a civil protection order.

The judgment is reversed and the case is remanded with direction to vacate the order of protection.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interest of the applicant for a protective order, we decline to identify the applicant or others through whom the applicant's identity may be ascertained.

[1] Specifically, the court stated: "I've had the opportunity to consider the statute and also the testimony and the evidence that's been produced today. I have serious concerns here about this issue and I feel like I do not have sufficient evidence in front of me, not to make a decision on this application.

"And I find that there [are] reasonable grounds for the [plaintiff] to be concerned with respect to [the defendant]. However, I don't know whether or not those concerns are within the recent history of events. There's been testimony here today about threats by [the defendant] within the last few years as to other students and I want to know more about that.

"And I'm going to continue this hearing out for two weeks. I want the school administrator here. I want you to subpoena her. And I want to know about what the school knows about the—if any, if they exist, whether there have been any threats at any of the schools. And that's the issue we're going to focus on at the two week period.

* * *

"This is a [plaintiff] who has been threatened by [the defendant], albeit years ago. And he did threaten to slit her throat and there's evidence before the Court, as to how both of their lives have proceeded over the last few years. And before I make a decision on how this serious issue should proceed, because it impacts both your lives on how you're getting your education, I want this information from the school."

[2] These school records are not part of the record before us, and, therefore, we have not reviewed them.

[3] The defendant also argued that the court improperly determined, as a matter of law, that § 46b-16a applied retroactively. Because we agree with the defendant that the court misinterpreted the stalking statute and, as result, there was insufficient evidence to grant the plaintiff's application for a civil protection order on that basis, we need not address the claim regarding the retroactive application of § 46b-16a.

[4] We are mindful that under the prior version of § 53a-181d (a), the perpetrator was prohibited from wilfully and repeatedly following or lying in wait for another person. *Kayla M.* v. *Greene,* supra, 163 Conn. App. 510 and n.8. General Statutes (Rev. to 2012) § 53a-181d (a) provided in relevant part: "A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or waits for such other person and causes such other person to reasonably fear for his physical safety. . . ." Nevertheless, this prior version of the statute, and the cases interpreting it, support our conclusion that same person must be the target or object of the perpetrator's acts.

[5] We note that there is no evidence of a second incident involving a knife and the plaintiff when she was in the third grade.