******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CITY OF MERIDEN ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 41441)

Prescott, Moll and Bishop, Js.

*Syllabus*

The plaintiffs, the city of Meriden and the Meriden City Council, appealed
to this court from the judgment of the trial court dismissing their appeal
from the final decision of the defendant Freedom of Information Com-
mission, in which the commission found that the city council violated
the open meeting requirements of the applicable provision (§ 1-225 [a])
of the Freedom of Information Act (§ 1-200 et seq.). Four political leaders
of the city council had gathered at city hall with the mayor and the
retiring city manager to discuss the search for a new city manager. The
leadership group, after arriving at a consensus to submit a resolution
for action by the city council to create a city manager search committee,
drafted a resolution that included the names of people to be appointed
to the committee and detailed their duties, and the resolution was
adopted at a city council meeting. Thereafter, a complaint was filed
with the commission alleging that the gathering was an unnoticed and
private meeting in violation of § 1-225 (a). The commission concluded
that the gathering was a "proceeding" within the meaning of § 1-200
(2), that such a proceeding constituted a "meeting" within the meaning
of that statute, and that the plaintiff had violated § 1-225 (a) by failing to
properly notice the leadership group gathering. Thereafter, the plaintiffs
appealed to the trial court, which rendered judgment dismissing the
appeal, concluding that the commissioner's factual findings and conclu-
sions were supported by substantial evidence, and that the leadership
group gathering constituted a meeting within the meaning of § 1-200
(2). On appeal to this court, the plaintiff claimed that the trial court
erred in concluding that a gathering of less than a quorum of city council
members to set an agenda and decide to submit a resolution for action
by the full city council constituted a "meeting" under § 1-200 (2), and
that such a gathering constituted a step in the process of agency-member
activity that made it a "proceeding" and, therefore, a "meeting" within
the meaning of § 1-200 (2). *Held* that the gathering of the leadership group
of less than a quorum of the city council members did not constitute a
"meeting" within the meaning of § 1-200 (2) and did not trigger the open
meeting requirements of § 1-225 (a): because the leadership group's
gathering did not serve an adjudicatory function within the plain meaning
of a "hearing" or a "proceeding," the gathering was not a hearing or
other proceeding under § 1-200 (2) and, instead, constituted a "convening
or assembly" for the purposes of that statute, and this court was bound
by *Windham* v. *Freedom of Information Commission* (48 Conn. App.
529), in which this court previously held that a gathering akin to a
convening or assembly, as opposed to a hearing or other proceeding,
of less than a quorum of members of a public agency generally does
not constitute a meeting within the meaning of § 1-200 (2); moreover,
the trial court's interpretation of "hearing or other proceeding" in § 1-200
(2) as alluding to a gathering between agency members that constitutes
a step in the process of agency-member activity lacked support in the
language of the statute or in this court's interpretation of the statute,
and although the court's discussion of public policy and the public
benefits of transparency reflected laudable policy goals, such discussion
was a matter of legislation, not judicial lawmaking.

Argued May 14—officially released August 6, 2019

*Procedural History*

Appeal from the decision of the defendant Freedom
of Information Commission, brought to the Superior
Court in the judicial district of New Britain, where the
court, *Hon. Henry Cohn*, judge trial referee, rendered

judgment dismissing the plaintiffs' appeal, from which the plaintiffs appealed to this court. *Reversed*; *judgment directed.*

*Deborah Leigh Moore*, for the appellants (plaintiffs).

*Valicia Dee Harmon*, commission counsel, for the appellee (defendant Freedom of Information Commission).

*Opinion*

BISHOP, J. The plaintiffs, the city of Meriden and the Meriden City Council (city council), appeal from the judgment of the trial court dismissing their appeal from the final decision of the defendant Freedom of Information Commission (commission), in which the commission found that the city council violated the open meeting requirements of the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq., specifically General Statutes § 1-225 (a).[1] On appeal, the plaintiff claims that the court erred in concluding that (1) a gathering of less than a quorum of city council members to set an agenda and decide to submit a resolution for action by the full city council constituted a "meeting" under § 1-200 (2), and (2) such a gathering constituted "a step in the process of agency-member activity" that made it a "proceeding" and, therefore, a "meeting" within the meaning of § 1-200 (2). We reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On January 3, 2016, the four political leaders of the city council, i.e., the majority and minority leaders and their deputies (leadership group), gathered at city hall with the mayor and the retiring city manager to discuss the search for a new city manager.[2] The leadership group arrived at a consensus to submit a resolution for action by the city council to create a city manager search committee. The leadership group drafted a one page resolution, which included the names of people to be appointed to the committee and detailed the duties of such committee, including recommending to the city council suitable candidates for the city manager position. At the January 19, 2016 city council meeting, the leadership group introduced the resolution, which subsequently was placed on the council's consent calendar.

On January 25, 2016, an editor for the Meriden Record Journal[3] filed a complaint with the commission alleging that the January 3, 2016 leadership group gathering was an unnoticed and private meeting in violation of § 1-225 (a).[4] Following a hearing on April 18, 2016, at which both parties appeared and presented evidence, the commission issued a final decision on November 16, 2016. In that decision, the commission found that the leadership group "gather[s] regularly with the mayor and city manager" to remain informed about issues that the city council may need to address. During these gatherings, the group "decides whether an issue requires city council action, and when necessary . . . discusses and drafts a resolution to go on the agenda of a city council meeting." The commission also found that such gatherings are not intended to constitute a quorum of the city council, which requires a meeting of at least seven members. The commission found, as well, that in gathering to discuss the formation of a city manager search

committee and drafting the resolution, "the leadership group [had] met to discuss or act upon a matter over which the leadership and the city council as a whole has supervision and control." The commission also took administrative notice of the plaintiff's minutes of the January 19, 2016 meeting and found "that the resolution was adopted at the council meeting without discussion or change."

As to the plaintiff's claim that the leadership group gathering was not a "meeting" within the meaning of § 1-200 (2), the commission rejected the plaintiff's argument that the communications at the leadership group gathering were limited to notice of meetings or the setting of agendas. The commission also rejected the plaintiff's argument that the gathering was not a "meeting" because a quorum was not present. The commission analyzed the purported conflict between this court's decisions in *Windham* v. *Freedom of Information Commission*, 48 Conn. App. 529, 711 A.2d 741 (1998), appeal dismissed, 249 Conn. 291, 732 A.2d 752 (1999), and *Emergency Medical Services Commission* v. *Freedom of Information Commission*, 19 Conn. App. 352, 561 A.2d 981 (1989), and concluded that the latter decision more aptly applied to the facts of this case. On that basis, the commission concluded that the gathering was a "proceeding" within the meaning of § 1-200 (2), and that such a proceeding constituted a "meeting" within the meaning of that subdivision. Accordingly, the commission concluded that the plaintiff had violated § 1-225 (a) by failing to properly notice the leadership group gathering. The commission, therefore, ordered the plaintiff to comply strictly with the open meeting requirements of § 1-225 (a) and advised the plaintiff that the leadership group may, in its own right, constitute a "committee of" the city council pursuant to § 1-200 (1).

On December 28, 2016, the plaintiff filed an appeal from the commission's decision to the Superior Court, arguing "that a gathering of elected officials without a quorum does not constitute a quorum[5] in accordance with [*Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 529]." (Footnote added.) On January 29, 2018, the court issued a memorandum of decision dismissing the plaintiff's appeal, concluding that this court's holding in *Windham* "is not completely determinative and, therefore, not binding on the issue" of whether the leadership group gathering fell within the definition of "meeting" under § 1-200 (2). Rather, the court stated that "there are times, factually, where certain agency members are merely 'convening' and there is a requirement of a quorum under § 1-200 (2); and there are times, factually, where agency members, in the language of the [commission] . . . are gathering with the implicit authorization of the city council as a whole and this gathering 'constituted a step in the process of agency-member activity.' " After stating that the

commission's factual findings and conclusions were supported by substantial evidence, the court concluded that the leadership group gathering constituted a meeting within the meaning of § 1-200 (2). This appeal followed.

The principal issue in this appeal is whether the gathering of the leadership group constituted a "meeting" within the meaning of § 1-200 (2) and, thus, triggered the open meeting requirements of § 1-225 (a). The plaintiff claims that, because there was no quorum at the gathering of the leadership group, there was no "meeting" under § 1-200 (2). The plaintiff further asserts that the legislature did not intend "proceeding" to mean "a step in the process of agency-member activity" as found by the commission, but, rather, that "proceeding" refers to an adjudicatory process involving testimony, evidence, and administrative findings. The commission responds that there was sufficient evidence in the administrative record to conclude that the leadership group conducted a "proceeding" within the meaning of § 1-200 (2) and that, in doing so, the plaintiff failed to comply with the open meeting requirements of § 1-225 (a), which the commission contends apply to such proceedings regardless of whether a quorum is present.

We begin by setting forth the relevant legal principles and standard of review. "This court reviews the trial court's judgment pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Similarly], this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Citation omitted; internal

quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 281–82, 77 A.3d 121 (2013).

Although the determination of what constitutes a "meeting" under § 1-200 (2) has been subjected to judicial interpretation, the issue in the present case requires this court to construe § 1-200 (2) to determine whether the leadership group gathering constituted a "proceeding" under that subdivision, and, therefore, a "meeting." Consequently, because the commission's interpretation of "proceeding" as meaning "a step in the process of agency-member activity" has not "been subjected to judicial scrutiny or consistently applied by the agency over a long period of time, our review is de novo." (Internal quotation marks omitted.) Id., 283.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Gould* v. *Freedom of Information Commission*, 314 Conn. 802, 810–11, 104 A.3d 727 (2014).

In addition, "we are bound to interpret the statute *as it is written* and cannot ignore the words used by the legislature. It is a basic tenet of statutory construction that the legislature does not intend to enact meaningless provisions. . . . Every word and phrase [in a statute] is presumed to have meaning, and we do not construe statutes so as to render certain words and phrases surplusage." (Emphasis in original; internal quotation marks omitted.) *Fiona C.* v. *Kevin L.*, 166 Conn. App. 844, 852, 143 A.3d 604 (2016). Finally, our inquiry into the statutory definition of "meeting" contained in § 1-200 (2) "must commence with the recognition of the legislature's general commitment to open governmental proceedings. The overarching legislative policy of the FOIA is one that favors the open conduct of governmental and free public access to government records. . . . Our construction of the [FOIA] must be

guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed." (Citations omitted; internal quotation marks omitted.) *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 711–12, 663 A.2d 349 (1995).

We begin our analysis by looking to the language of § 1-200 (2), which states in relevant part that a " '[m]eeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. . . ." Within this language, the phrase "hearing or other proceeding" is separate from the phrase "convening or assembly of a quorum." In addition, the term "quorum" is not present in the "hearing or other proceeding" phrase but is included in the two subsequent phrases containing the terms "multimember public agency." The language of the statute, therefore, provides that the FOIA public meeting requirements apply to "any hearing or other proceeding" of a public agency, no matter the number of people attending, but do not apply to a "convening or assembly" of less than a quorum of a multimember public agency. Accordingly, the present case requires us to determine whether the leadership group gathering was a "hearing or other proceeding," which does not require a quorum to constitute a "meeting."

The terms "hearing" and "proceeding" are not defined in the FOIA. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Middlebury* v. *Connecticut Siting Council*, 326 Conn. 40, 49, 161 A.3d 537 (2017); see also *Board of Selectman* v. *Freedom of Information* Commission, 294 Conn. 438, 449, 984 A.2d 748 (2010) ("when, as here, a statute does not define a term, we may look to the dictionary to determine the commonly approved meaning of the term"). Ballentine's Law Dictionary defines a "proceeding" as, inter alia, "any application *to a court of justice*, however made, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object." (Emphasis added.) Ballentine's Law Dictionary (3d Ed. 1969); see also *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 596, 749 A.2d 682 ("[t]he term proceeding, as ordinarily used, is generic in meaning and broad enough to include all methods involving *the action of the courts*" [emphasis added; internal quotation marks omitted]), cert. denied, 253 Conn. 926, 754 A.2d 796 (2000). A "proceeding" is further defined as "the form *in which*

*actions* are to be brought and defended, the manner of intervening in suits, of conducting them of opposing judgments and of executing. . . . Ordinary proceedings intend the regular and usual mode of *carrying on a suit by due course of common law*." (Citation omitted; emphasis altered; internal quotation marks omitted.) *Hyllen-Davey* v. *Plan & Zoning Commission*, supra, 597.

Similarly, a "hearing" is defined variously as "[t]he *presentation and consideration of proofs and arguments*, and determinative action with respect to the issue," and "[t]he *presentation of a case or defense* before an administrative agency, with opportunity to introduce evidence in chief and on rebuttal, and to cross-examine witnesses, as may be required for a full and true disclosure of the facts." (Emphasis added.) Ballentine's Law Dictionary, supra. A "hearing" is also defined as "[a] judicial session, [usually] open to the public, *held for the purpose of deciding issues of fact or of law*, sometimes with witnesses testifying," and "[a]ny setting in which an affected person *presents arguments to a decision-maker* . . . ." (Emphasis added.) Black's Law Dictionary (9th Ed. 2009). In addition, "[w]here a statute provides for a 'hearing,' the term necessarily implies the power *to administer some adequate remedy*." (Emphasis added.) Ballentine's Law Dictionary, supra.[6]

On the basis of our review of these definitions, it is clear that the ordinary meaning of the terms "hearing" and "proceeding" allude to adjudicative activities. We, therefore, disagree with the trial court's interpretation of the phrase "hearing or other proceeding" in § 1-200 (2) as meaning a gathering among agency members that constitutes "a step in the process of agency-member activity . . . ." Rather, the more proper reading of that subdivision is that "hearing or other proceeding" refers to a process of adjudication, which falls outside the scope of activities conducted during the leadership group gathering in the present case. This interpretation of § 1-200 (2) imparts an operative distinction between "hearing or other proceeding" and "convening or assembly of a quorum," without which it would be unclear as to what constitutes a "hearing" or "proceeding" but not a "convening" or "assembly." See *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 543, 93 A.3d 1142 (2014) (to ignore language in statute "would contravene the cardinal maxim that statutes shall not be construed to render any sentence, clause, or phrase superfluous or meaningless" [internal quotation marks omitted]).

Moreover, the interpretation of "hearing or other proceeding" as relating to adjudication finds support in the language of our Supreme Court's decision in *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 234 Conn. 717–18, which, although

reserving the issue of whether evidentiary presentations in the context of arbitration proceedings could be subject to the open meeting requirements of the FOIA, implies that the evidentiary process generally, i.e., in the context of adjudication, falls within the definition of "meeting." See id. ("[T]he arbitration hearing also provides an opportunity for the parties to create an evidentiary record on which the arbitrators can rely in making their final determination of any issues left unresolved. Since we already have concluded that the FOIC order at issue here cannot stand, we postpone to another day questions concerning the validity of a more narrowly tailored FOIC order that requires open hearings only with respect to evidentiary presentations and permits executive sessions for discussion and argument about the contents of the parties' last best offers." [Footnote omitted.]). In sum, because the gathering of the leadership group did not serve an adjudicatory function within the plain meaning of "hearing" and "proceeding," the gathering was not a "hearing or other proceeding" under § 1-200 (2) but, instead, constituted a "convening or assembly" for the purposes of that subdivision.

The commission, nonetheless, argues that this court's previous decisions in regard to the interpretation of § 1-200 (2) are in conflict. Specifically, the commission asserts that the gathering of the leadership group constituted a proceeding and, pursuant to this court's decision in *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 356, a "meeting." The commission further argues that *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 529, is not conclusive because it does not discuss the difference between the phrases "hearing or other proceeding" and "convening or assembly of a quorum . . . ." We disagree and, instead, conclude that the cases are not inconsistent and are, in fact, in harmony with our interpretation of § 1-200 (2).

In *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 353–54, twenty to twenty-five people, including the mayor and less than a quorum of the East Hartford Emergency Medical Services Commission (EMSC), attended a presentation by two ambulance services. A member of the EMSC later filed a complaint with the commission, which subsequently determined that the EMSC had violated the open meeting provision of the FOIA by failing to provide notice of what it considered was a "meeting." Id. On appeal, the trial court reversed the decision of the commission hearing officer, concluding that a "hearing or other proceeding" of a public agency required the presence of a quorum for the open meeting provision to apply, and because there was no quorum at the presentation, there was no violation of the FOIA. Id., 355.

In addressing the question of whether the EMSC

members' attendance at the presentation constituted a "meeting" under the FOIA, this court stated that "[t]he plain language of General Statutes § 1-18a (b) [the predecessor to § 1-200 (2)] does not require a quorum as a necessary precondition to any hearing or other proceeding of a public agency . . . . The word quorum does not appear in the clause dealing with any hearing or other proceeding of a public agency . . . . The legislature did not define a meeting as any hearing or proceeding of a quorum of a public agency, as it might have done." (Internal quotation marks omitted.) Id. The court further opined that "[t]he trial court's construction of § 1-18a (b) would make the quorum requirement in that section redundant. . . . Beyond the trial court's statutory interpretation, no reason has been cited for reading a quorum requirement into the first clause of § 1-18a (b) nor are we aware of any." (Citation omitted; internal quotation marks omitted.) Id., 356. The court, however, did not reverse the trial court's judgment because it concluded that "there was an insufficient factual basis for the [commission's] finding that the presentation was a proceeding of a public agency to discuss or act upon a matter over which it had supervision, control, jurisdiction or advisory power." (Internal quotation marks omitted.) Id.

In *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 529, the town appealed from the trial court's judgment dismissing an administrative appeal taken from a final decision of the commission. The commission had concluded that the town's board of selectmen had violated the open meeting requirements of the FOIA by not providing notice of a "meeting," as defined under § 1-18a (b). Id., 530. The gathering at issue involved six town officials, including less than a quorum of selectmen, who met to discuss whether they would support a proposal by the first selectman that the board go into executive session to discuss a landfill contract matter. Id. On appeal, this court reversed the judgment of the trial court, and concluded that "[t]he Windham board of selectmen consists of eleven selectmen. Six members constitute a quorum. At the March 20, 1995 gathering, only four members of the board were present. As a result, there was no quorum and, therefore, no meeting as defined by § 1-18a (b)." Id., 531.

In reviewing the case at hand, we are bound by this court's holding in *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 531, that a gathering, akin to a "convening or assembly" as opposed to a "hearing or other proceeding," of less than a quorum of members of a public agency generally does not constitute a "meeting" within the meaning of § 1-200 (2).[7] As noted, and contrary to the commission's assertion, this holding is not in conflict with the decision in *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 355,

which, by stating that "any hearing or other proceeding"; (internal quotation marks omitted); need not contain a quorum to constitute a "meeting," implicitly reached the same conclusion that we reach in this case, which is that a "hearing or other proceeding" is different from a "convening or assembly" for purposes of determining whether a "meeting" occurred. When read together, these cases support the distinction between the two phrases, with the result being that a gathering, akin to a "convening or assembly," of less than a quorum of members of a public agency is not subject to the open meeting requirements of the FOIA unless that gathering may be considered a "hearing or other proceeding" within the meaning of § 1-200 (2). Moreover, as we already have determined, the leadership group gathering in the present case does not fit within the ordinary meaning of "hearing" or "proceeding" and, thus, does not constitute a "hearing or other proceeding" under § 1-200 (2). Accordingly, we conclude that the gathering of the leadership group of less than a quorum of the city council members did not constitute a "meeting" within the meaning of § 1-200 (2) and, pursuant to this court's decision in *Windham* v. *Freedom of Information Commission*, supra, 531, did not trigger the open meeting requirements of § 1-225 (a).

We also note that, to the extent that this court has interpreted § 1-200 (2) in *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 352, and *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 529, the General Assembly's inaction in amending the statute in the time since those cases were decided permits an inference of legislative acquiescence to this court's interpretation of it. See *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 267, 193 A.3d 520 (2018) ("following judicial construction of statute, [o]nce an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision" [internal quotation marks omitted]); *Efstathiadis* v. *Holder*, 317 Conn. 482, 492–93, 119 A.3d 522 (2015) ("Although we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. . . . Indeed, one of the indicators of legislative acquiescence to our interpretation of a statute is the passage of an appropriate interval [of time] to permit legislative reconsideration . . . without corrective legislative action . . . ." [Citation omitted; internal quotation marks omitted.]).

Finally, we reiterate our previous point that the trial court's interpretation of "hearing or other proceeding"

in § 1-200 (2) as alluding to a gathering between agency members that constitutes "a step in the process of agency-member activity" finds no support in the language of the statute or in this court's interpretation of the statute. Although the trial court's discussion of public policy and the public benefits of transparency reflect laudable policy goals, such discussion is a matter of legislation, not judicial lawmaking. "[I]t is up to the legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. *Ferguson* v. *Skrupa*, 372 U.S. 726, 729–30, 83 S. Ct. 1028, 10 L. Ed. 2d 93 [1963] . . . ." (Internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988); see also *Davis* v. *Forman School*, 54 Conn. App. 841, 858, 738 A.2d 697 (1999).

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.

[1] We refer to the city and the city council collectively as "the plaintiff."

[2] The city council is a public agency within the meaning of § 1-200 (1) (A). Section 1-200 (1) (A) provides in relevant part that "public agency" means: "Any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official, or body or committee thereof but only with respect to its or their administrative functions . . . ."

[3] The Meriden Record Journal and Daniel Brechlin, an editor from that publication, were the complainants before the commission and were named as defendants in the administrative appeal, but they did not participate therein.

[4] General Statutes § 1-225 (a) provides in relevant part that "[t]he meetings of all public agencies . . . shall be open to the public. . . ."

[5] Presumably, the plaintiff meant that a gathering without a quorum does not constitute a "meeting."

[6] In looking to the dictionary definitions of "hearing" and "proceeding," we note that "our analysis continues to be guided by the plain meaning rule . . . even when there are a range of dictionary meanings for [the] statutory term[s]." *State* v. *Ruocco*, 151 Conn. App. 732, 752, 95 A.3d 573 (2014), aff'd, 322 Conn. 796, 144 A.3d 354 (2016).

[7] "[I]t is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding. . . . As we have often stated, this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Citation omitted; internal quotation marks omitted.) *Staurovsky* v. *Milford Police Dept.*, 164 Conn. App. 182, 202, 134 A.3d 1263 (2016), appeal dismissed, 324 Conn. 693, 154 A.3d 525 (2017).